UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v. -    :

BENJAMIN CARDONA,    :
KEVIN LYNCH, and
WILFREDO HERNANDEZ,    :

    Defendants.    :

- - - - - - - - - - - - - - - - - X

**07 CRIM 1162**

SEALED INDICTMENT

07 Cr. _____ (  )

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 17 2007

JUDGE KOELTL

## COUNT ONE

### (Conspiracy)

The Grand Jury charges:

### Background

1.    At all times relevant to this Indictment, BENJAMIN CARDONA, the defendant, was employed as a manager in the digital media design group (the "DMD Group") at Gartner, Inc. ("Gartner"), a company headquartered in Stamford, Connecticut that provides research, analysis, and consulting services to clients regarding information technology.  As a manager in the DMD Group, CARDONA was responsible for, among other things, the purchase of multi-media services and equipment for Gartner.

2.    At all times relevant to this Indictment, KEVIN LYNCH, the defendant, was employed by Gartner as a supervisor in the DMD Group.  As a supervisor, LYNCH was responsible for, among other

things, overseeing contracts for the hiring of temporary personnel and the purchase and rental of equipment for Gartner. LYNCH also was responsible for supervising CARDONA's work at Gartner.

3.    At all times relevant to this Indictment, WILFREDO HERNANDEZ, the defendant, was a conductor for the Metro-North Railroad. HERNANDEZ also owned and operated two companies, Falcon Studio Graphics and Video, Inc. ("Falcon") and Triumph Corporate Media, Inc. ("Triumph"). Falcon purported to do business out of an address in Croton-on-Hudson, New York, an address which also served as HERNANDEZ's residence. Triumph purported to do business out of an address in Manhattan, New York, which address served as a "virtual" office at which Triumph had use of a telephone line and a mailbox. From time to time, Gartner awarded contracts for multi-media services and equipment rentals to Falcon and Triumph.

4.    At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1"), owned and operated two companies, Virtual Office Team, Inc. ("Virtual") and Strategic Media, Inc. ("Strategic"), which did business out of offices located in Manhattan, New York. Among other things, Virtual and Strategic contracted with Gartner to provide temporary employees to work on multi-media editing projects.

5.    At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-2"), owned and

-2-

operated Jasmin St. Claire, Inc. ("JSC"), a company located in Marina
Del Rey, California.  Among other things, JSC operated a for-profit
website that marketed adult films.  JSC performed no legitimate
commercial services for Gartner, Falcon, Triumph, Virtual, or
Strategic.

## The Kickback Scheme

6.    From at least in or about September 2002 through in
or about March 2005, in the Southern District of New York and
elsewhere, BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ,
the defendants, CC-1 and CC-2, and others known and unknown,
participated in a scheme whereby HERNANDEZ and CC-1 paid CARDONA and
LYNCH kickbacks in exchange for CARDONA and LYNCH causing Gartner
to award millions of dollars worth of contracts for multi-media
services and equipment to Falcon, Triumph, Virtual, and Strategic.
Neither CARDONA nor LYNCH disclosed to Gartner HERNANDEZ's and CC-1's
kickback payments, and such payments were made without the knowledge
or approval of Gartner.

7.    As a part of the scheme, CC-1 paid commercial bribes
to BENJAMIN CARDONA and KEVIN LYNCH, the defendants, by making cash
payments to them.

8.    As a further part of the scheme, WILFREDO HERNANDEZ,
the defendant, and CC-1 paid commercial bribes to BENJAMIN CARDONA
and KEVIN LYNCH, the defendants, and disguised the true nature of

-3-

the bribes, by providing CC-2 with checks drawn on accounts in the names of Falcon, Triumph, Virtual, and Strategic and made payable to JSC. CC-2 then passed the commercial bribes (of which CC-2 received a portion) to CARDONA in the form of checks from JSC payable to CARDONA. Upon receiving funds from CC-2, CARDONA then shared such funds with LYNCH.

9. As an additional means of disguising the true nature of the commercial bribes, WILFREDO HERNANDEZ, the defendant, typically identified checks to JSC as being payments for "services rendered," and CC-2 identified checks to CARDONA as also being for "services rendered." In truth and in fact, JSC did not perform any legitimate commercial services for Falcon, Triumph, Virtual or Strategic, and CARDONA did not perform any legitimate commercial services for JSC.

10. In exchange for the kickback payments, BENJAMIN CARDONA and KEVIN LYNCH, the defendants, caused Gartner to enter into approximately $3.1 million dollars worth of contracts with Falcon, Triumph, Virtual, and Strategic.

## Statutory Allegations

11. From at least in or about September 2002 through in or about March 2005, in the Southern District of New York and elsewhere, BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ, the defendants, and others known and unknown, unlawfully, willfully,

-4-

and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States of America, to wit, violations of Title 18, United States Code, Sections 1952(a)(3)(A), 1341, 1346, and 1956(a)(1)(B)(i).

## Objects of the Conspiracy

12. It was a part and an object of the conspiracy that BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ, the defendants, and others known and unknown, unlawfully, willfully, and knowingly would and did travel in interstate commerce and use the mail and a facility in interstate commerce, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, specifically, commercial bribery in violation of New York State Penal Law Sections 180.00, 180.03, 180.05, and 180.08, and, thereafter, would and did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3)(A).

13. It was further a part and an object of the conspiracy that BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ, the defendants, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and

artifice to defraud, including a scheme and artifice to deprive
another of the intangible right of honest services, and for obtaining
money and property by means of false and fraudulent pretenses,
representations, and promises, for the purpose of executing such
scheme and artifice to defraud, and attempting so to do, would and
did place in a post office and authorized depository for mail matter,
a matter and thing to be sent and delivered by the Postal Service,
and deposit and cause to be deposited a matter and thing to be sent
and delivered by a private and commercial interstate carrier, and
take and receive therefrom, such matter and thing, and knowingly
cause to be delivered by mail and by such carrier according to the
direction thereon, and at the place at which it was directed to be
delivered by the person to whom it was addressed, such matter and
thing, in violation of Title 18, United States Code, Sections 1341
and 1346.

14.   It was further a part and an object of the conspiracy
that BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ, the
defendants, and others known and unknown, in an offense involving
and affecting interstate and foreign commerce, knowing that the
property involved in a financial transaction represented the
proceeds of some form of unlawful activity, would and did conduct
and attempt to conduct such a financial transaction which in fact
involved the proceeds of specified unlawful activity knowing that

the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### Overt Acts

15.    In furtherance of the conspiracy and to effect the illegal objects thereof, BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about September 9, 2002, CC-1 caused two invoices in the amount of approximately $1,500 and approximately $2,040, respectively, to be sent from Virtual in Manhattan, New York, to Gartner in Stamford, Connecticut.

b.    On or about October 7, 2002, CARDONA and LYNCH caused Gartner to mail a check in the amount of approximately $18,000 from Fort Meyers, Florida, to Virtual in Manhattan, New York.

c.    On or about August 26, 2003, CC-1 caused an invoice in the amount of $1,140 to be sent from Strategic in Manhattan, New York, to Gartner in Stamford, Connecticut.

d.    On or about September 2, 2003, CARDONA and LYNCH caused Gartner to mail a check in the amount of approximately $11,808 from Fort Meyers, Florida, to Strategic in Manhattan, New York.

-7-

e.    Between on or about May 7, 2004, and on or about May 21, 2004, HERNANDEZ caused six invoices totaling approximately $55,335 to be sent to Gartner in Stamford, Connecticut, from Falcon in Ossining, New York.

f.    On or about June 1, 2004, CARDONA and LYNCH caused Gartner to mail a check in the amount of approximately $55,335 from Fort Meyers, Florida, to Falcon in Ossining, New York.

g.    On or about June 14, 2004, HERNANDEZ wrote a check in the amount of approximately $5,000 from the account of Falcon made payable to JSC.

h.    On or about June 24, 2004, CC-2 wrote a check in the amount of approximately $4,250 from the account of JSC payable to CARDONA.

i.    Between on or about July 27, 2004 and on or about July 30, 2004, HERNANDEZ caused three invoices totaling approximately $22,375 to be sent to Gartner in Stamford, Connecticut, from Triumph in Manhattan, New York.

j.    On or about August 27, 2004, CARDONA and LYNCH caused Gartner to mail a check in the amount of approximately $22,375 from Fort Meyers, Florida, to Triumph in Manhattan, New York.

k.    On or about September 5, 2004, HERNANDEZ wrote a check in the amount of approximately $5,000 from the account of Triumph made payable to JSC.

-8-

l.    On or about September 9, 2004, CC-2 wrote a check in the amount of approximately $4,250 from the account of JSC made payable to CARDONA.

m.    On or about September 10, 2004, CC-1 caused a check in the amount of approximately $3,450 to be drawn on the account of Strategic payable to JSC.

n.    On or about September 14, 2004, CC-2 wrote a check in the amount of approximately $3,000 from the account of JSC made payable to CARDONA.

(Title 18, United States Code, Section 371).

## COUNT TWO

### (Travel Act/Commercial Bribery)

The Grand Jury further charges:

16.    The allegations set forth in paragraphs 1 through 10 and 15 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

17.    From at least in or about September 2002 through in or about March 2005, in the Southern District of New York and elsewhere, BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ, the defendants, did travel in interstate commerce and use the mail and a facility in interstate commerce, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity,

-9-

specifically, commercial bribery in violation of New York State Penal Law Sections 180.00, 180.03, 180.05, and 180.08, and, thereafter, did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, to wit, CARDONA, LYNCH, and HERNANDEZ caused mailings from Fort Meyers, Florida, to Ossining, New York, and Manhattan, New York, and used interstate wires, in furtherance of a fraud and commercial bribery scheme.

(Title 18, United States Code, Sections 1952(a)(3)(A) and 2.)

## COUNT THREE

### (Mail Fraud)

The Grand Jury further charges:

18.  The allegations set forth in paragraphs 1 through 10 and 15 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

19.  From at least in or about September 2002 through in or about March 2005, in the Southern District of New York and elsewhere, BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ, the defendants, having devised and intending to devise a scheme and artifice to defraud, including a scheme and artifice to deprive another of the intangible right of honest services, and for obtaining money and property by means of false and fraudulent pretenses,

representations, and promises, to wit, a scheme to defraud Gartner, Inc., unlawfully, willfully, and knowingly, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and did deposit and cause to be deposited a matter and thing to be sent and delivered by a private and commercial interstate carrier, and did take and receive therefrom such matter and thing, and did knowingly cause to be delivered, by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matter and thing, to wit, on multiple occasions, CARDONA, LYNCH, and HERNANDEZ caused Gartner to mail checks from Fort Meyers, Florida, to Ossining, New York, and New York, New York, in connection with purported multimedia services and equipment rental contracts totaling approximately $3.1 million, which contracts were awarded in exchange for commercial bribes.

(Title 18, United States Code, Sections 1341, 1346, and 2.)

## COUNT FOUR

### (Money Laundering)

The Grand Jury further charges:

20.    The allegations set forth in paragraphs 1 through 10 and 15 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

21.    From at least in or about September 2002 through in or about March 2005, in the Southern District of New York and elsewhere, BENJAMIN CARDONA, KEVIN LYNCH, and WILFREDO HERNANDEZ, the defendants, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, to wit, CARDONA, LYNCH, and HERNANDEZ, on multiple occasions, passed money through a bank account controlled by CC-2 to conceal proceeds of the fraud scheme charged in Count Three.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

-12-

## FORFEITURE ALLEGATION

22.   As the result of committing one or more of the offenses alleged in Counts One through Four of this Information, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 982, and 28 U.S.C. § 2461, all property, real and personal, that constitutes or is derived from the proceeds traceable to the commission of the said offenses and all property, real and personal involved in the money laundering offense and all property traceable to such property, including but not limited to the following:

a.   At least $3,100,000 in United States currency, representing the amount of proceeds obtained as a result of the offenses constituting specified unlawful activity charged in Counts One through Four and representing the sum in aggregate which is property which was involved in the money laundering offense or is traceable to such property for which the defendants are jointly and severally liable, including but not limited to:

i.   All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 15 Beal Street, Stamford, Connecticut.

-13-

## Substitute Asset Provision

23.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 371, 981, 982, 1341, and 1956(a)(1)(B)(i), (a)(2)(B)(i), and (a)(2)(B)(ii); Title 28, United States Code, Section 2461.)

_____
FOREPERSON

MICHAEL J. GARCIA
United States Attorney

-14-

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### BENJAMIN CARDONA,
### KEVIN LYNCH, and
### WILFREDO HERNANDEZ,

**Defendants.**

### INDICTMENT

07 Cr.

Title 18, U.S.C., Sections 371,
1952(a)(3)(A), 1341, 1346, 1956(a)(1)(B)(i), and 2

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_____
Foreperson.